# United States District Court
# Middle District of Florida
# Orlando Division

**LEARNING CONNECTIONS, INC., SYED HASNAIN,**

                    **Plaintiffs,**

-vs-                                                **Case No.  6:11-cv-368-Orl-19GJK**

**KAUFMAN, ENGLETT & LYND, PLLC f/k/a Kaufman, Englett & Lynd, LLC, JEFFREY S. KAUFMAN,**

                      **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss for Failure to State a Cause of Action with Embedded Memorandum of Authority by Kaufman, Englett & Lynd, PLLC and Jeffery S. Kaufman (Doc. No. 6, filed Mar. 29, 2011);

2. Motion to Dismiss for Failure to State a Cause of Action with Embedded Memorandum of Authority by Kaufman, Englett & Lynd, PLLC, and Jeffery S. Kaufman (Doc. No. 13, filed Apr. 14, 2011); and

3. Response and Memorandum of Law in Opposition to Defendants' Motion to Dismiss Amended Complaint by The Learning Connections, Inc., and Syed Hasnain (Doc. No. 14, filed Apr. 25, 2011).

**Background**

The Learning Connections, Inc. ("The Learning Connections") is a Tennessee corporation that was doing business as a day care center and preschool.[1] (Doc. No. 12 ¶ 2.) In February of 2007 The Learning Connections entered into a mortgage and promissory note with Fifth Third Bank, N.A. ("Fifth Third Bank") for the purchase of a commercial property located in Tennessee ("Commercial Property"). (*Id*.) The Learning Connections operated a steady, profitable business at the Commercial Property, maintaining approximately ninety-nine children per week. (*Id*. ¶ 10.) Syed Hasnain, Nadira Hasnain, Fred Gentry, and Linda F. Gentry were shareholders of The Learning Connections. (*Id*. ¶ 2.)

In July of 2008 Syed Hasnain's father passed away in Pakistan, and Syed Hasnain ("Hasnain") immediately made arrangements to travel to Pakistan and spend time with his family. (*Id*. ¶ 12.) Also in July of 2008, Gentry[2] sustained serious injuries from a traffic accident and spent a significant amount of time in the hospital. (*Id*.) During this time, Gentry was unaware that Hasnain was out of the country, and Hasnain was unaware that Gentry was hospitalized. (*Id*.) As a result, neither Hasnain nor Gentry paid the mortgage for the Commercial Property in August of 2008 and September of 2008. (*Id*. ¶ 13.) Upon Hasnain's return from Pakistan and Gentry's discharge from the hospital, The Learning Connections resumed paying the mortgage on the Commercial Property. (*Id*.) However, all mortgage payments made by The Learning Connections after September of 2008 were rejected by Fifth Third Bank. (*Id*.) Instead of accepting the mortgage payments, Fifth Third Bank retained counsel and initiated non-judicial foreclosure proceedings against the Commercial Property. (*Id*. ¶ 14.)

---

[1] The facts presented in this Order are derived from the allegations of the Amended Complaint. (Doc. No. 12.) These facts are included only to provide context and should not be construed as findings of fact.

[2] It is unclear from the allegations of the Amended Complaint whether Linda F. Gentry, Fred Gentry, or both sustained injuries in the traffic accident.

On November 12, 2009, Fifth Third Bank sent a Notice of Foreclosure to The Learning Connections stating that the Commercial Property would be subject to a foreclosure sale on December 9, 2009. (*Id.* ¶ 14; Doc. No. 12-2.) After receiving the Notice of Foreclosure, Hasnain retained the services of Kaufman, Englett & Lynd, PLLC ("KEL"), a Florida limited liability company principally located in Orlando, Florida. (Doc. No. 12 ¶ 15.) KEL did not provide Hasnain or The Learning Connections (collectively "Plaintiffs") with any legal advice regarding non-judicial foreclosure proceedings, did not initiate a contested foreclosure, and did not respond in any way to Fifth Third Bank's initiation of non-judicial foreclosure proceedings against the Commercial Property. (*Id.* ¶ 16.) Thus, despite retaining KEL, the non-judicial foreclosure proceedings continued, a final judgment was entered in favor of Fifth Third Bank, and Fifth Third Bank took legal title to the Commercial Property. (*Id.* ¶ 17.) Following the foreclosure, KEL attempted to negotiate directly with Fifth Third Bank. (*Id.*) The negotiations proved unsuccessful. (*Id.*) On June 21, 2010, KEL sent correspondence to Syed and Nadira Hasnain informing them that KEL had concluded its representation of The Learning Connections and its shareholders. (*Id.*; Doc. No. 12-4.)

On March 10, 2010, Plaintiffs filed a two-count Complaint against KEL and Jeffery S. Kaufman (collectively "Defendants"). (Doc. No. 1.) Defendants subsequently filed a Motion to Dismiss for Failure to State a Cause of Action with Embedded Memorandum of Authority. (Doc. No. 6, filed March 29, 2011.) On March 31, 2011, Plaintiffs filed a three-count Amended Complaint. (Doc. No. 12.) Count I of the Amended Complaint asserts a claim of professional malpractice against KEL.[3] (*Id.* ¶¶ 20-24.)

---

[3] Specifically, Count I asserts that KEL "neglected a reasonable duty" to the Plaintiffs by: (1) failing to advise Plaintiffs that an uncontested foreclosure would proceed in the absence of a contested foreclosure filing and result in Fifth Third Bank obtaining title to the commercial property without contest; (2) failing to initiate and seek injunctive relief through a contested foreclosure filing; and (3) failing to take any reasonable course of action that a similarly situated and licensed Tennessee
(continued...)

Count II alleges that Kaufman negligently supervised other attorneys at KEL, and Count III alleges that Defendants fraudulently concealed attorney malpractice. (*Id*. ¶¶ 25-34.)

On April 14, 2011, Defendants filed the present Motion to Dismiss for Failure to State a Cause of Action with Embedded Memorandum of Authority. (Doc. No. 13.) Plaintiffs responded in opposition on April 25, 2011. (Doc. No. 14.)

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S.

---

[3](...continued)
attorney would have taken. (Doc. No. 12 at 7-8.)

at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

### I. Attorney Malpractice

Defendants contend that the present action is barred by Tennessee's one-year statute of limitations for attorney malpractice actions set forth in Tennessee Code Annotated § 28-3-104(a)(2). (Doc. No. 13 at 5.) In response, Plaintiffs maintain that Florida law is applicable to the attorney malpractice claims. (Doc. No. 14 at 5.) Plaintiffs additionally argue that regardless of the Court's choice of law determination, the claims are not barred by either the one-year statute of limitations set forth in Tennessee Code Annotated § 28-3-104(a)(2) or the two-year statute of limitations set forth in § 95.11(4)(a), Florida Statutes. (Doc. No. 14 at 5-7.)

#### A. Choice of Law

The present action is an action in diversity. (*See* Doc. No. 12 ¶ 1.) In diversity cases, the Court must apply the substantive law of the forum, Florida, including Florida's choice of law rules. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-

97 (1941). The Eleventh Circuit has provided the following three step approach to a choice of law analysis:

> The first step in choice of law analysis is to ascertain the nature of the problem involved, i.e. is the specific issue at hand a problem of the law of contracts, torts, property, etc. The second step is to determine what choice of law rule the state of [Florida] applies to that type of legal issue. The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which state's substantive law applies.

*Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983).

Here, the specific issue at hand is a problem of the law of torts. *See Salerno v. Auto Owners Ins. Co.*, No. 8:04-CV-1056-T-24 MAP, 2006 WL 2085467, at *3 ) (M.D. Fla. July, 25 2006) ("'Florida law views legal malpractice as a personal tort . . . .'") (quoting *Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So. 2d 755, 757 (Fla. 2005)). "In tort cases, Florida applies the significant relationship test of the Restatement (Second) of Conflicts of Laws." *Nelson v. Freightliner, LLC*, 154 F. App'x 98, 102 (11th Cir. 2005) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)); *Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1191 (S.D. Fla. 2007) ("A federal district court sitting in Florida and deciding a tort claim is required by Florida choice-of-law rules to apply the 'most significant relationship test.'") (citations omitted). The significant relationship test involves consideration of several factors to determine which state has the most contacts with the action or the greatest interest in the outcome as follows:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflicts of Law § 145. Examining Plaintiffs' claims against this analytical backdrop, it is clear that Tennessee law has the most significant relationship to the claims.

The Learning Corporation is a Tennessee Corporation that was doing business in Tennessee. In addition, the Commercial Property is located in Tennessee, the non-judicial foreclosure proceedings took place in Tennessee, and the relationship between the parties was centered around the foreclosure of the Commercial Property pursuant to Tennessee law. The only factor weighing in favor of applying Florida law is that KEL is a Florida limited liability company that is principally located and doing business in Florida. When balanced against the substantial factors supporting the application of Tennessee law, the scale tips in favor of Tennessee. Accordingly, applying the "most significant relationship test," Tennessee law applies to Counts I, II, and III of the Amended Complaint.

### B. Statute of Limitations - Tennessee

Under Tennessee law, whether grounded in breach of contract or tort, the statute of limitations in actions against attorneys for malpractice is one year from the date the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(2). To determine when a legal malpractice action accrues, Tennessee courts apply a two-prong "discovery rule." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). Under the discovery rule, a cause of action accrues for statute of limitation purposes "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Id.* (citing *Shadrick v. Cocker*, 963 S.W.2d 726, 733 (Tenn. 1998)). In legal malpractice cases, the discovery rule is composed of two elements: "(1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or

negligent conduct." *Id.* (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 28-30 (Tenn. 1995)). The Court will address each of these elements in turn.

### 1. Actual Injury

An actual injury occurs when a client suffers "the loss of a legal right, remedy or interest, or the imposition of a liability." *Kohl*, 977 S.W.2d at 532. "'Because negligence without injury is not actionable, the legal malpractice statute of limitations does not begin to run until an attorney's negligence has actually injured the client.'" *Wilson v. Pickens*, 196 S.W.3d 138, 142 (Tenn. Ct. App. 2005) (quoting *Cherry*, 36 S.W.3d at 84). "Before that time, any injury is only prospective and uncertain." *Cherry*, 36 S.W.3d at 84 (citation omitted). "The most easily identifiable time when rights, interests and liabilities become fixed is when a court enters a judgment that adjudicates the parties' rights, imposing a 'legally cognizable injury.'" *O'Boyle v. Shulman*, No. 3:09-CV-169, 2010 WL 1408444, at *5 (E.D. Tenn. Apr. 4, 2010) (quoting *Cherry*, 36 S.W.2d at 84).

Here, the parties contend that Plaintiffs suffered an actual injury when the Commercial Property was sold by foreclosure on December 9, 2009, following the non-judicial foreclosure proceedings initiated by Fifth Third Bank. (Doc. No. 13 at 6; Doc. No. 14 at 8.) The Court agrees. The foreclosure sale of the Commercial Property extinguished Plaintiffs' legal interest in the Commercial Property. (*See* Doc. No. 12-2.) Accordingly, Plaintiffs suffered an actual injury no later than December 9, 2009.

### 2. Knowledge

The knowledge component of the discovery rule may be established by evidence of the plaintiff's actual or constructive knowledge that injury resulted from the defendant's allegedly wrongful or negligent conduct. *Kohl*, 977 S.W.2d at 532 (citing *Carvell*, 900 S.W.2d at 29). Actual knowledge exists where "the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the

malpractice." *Id.* "Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *Id.* (citing *Carvell*, 900 S.W.2d at 29). Tennessee courts have stressed that there is no requirement that a plaintiff actually know the specific type of legal claim he has, or that the injury constituted a breach of the appropriate legal standard. *Id*. at 533 (citing *Shadrick*, 963 S.W.2d at 733). Rather, a plaintiff is deemed to have constructive knowledge when "he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Id.* (citing *Carvell*, 900 S.W.2d at 29).

In the present case, Defendants contend that because the Plaintiffs had actual knowledge of the foreclosure sale on December 9, 2009, the statute of limitations began running on the date of the sale. (Doc. No. 13 at 7.) In response, Plaintiffs contend that while they were aware of the foreclosure sale on December 9, 2009, they were not aware that the foreclosure sale occurred as a result of Defendants' wrongful conduct prior to June of 2010 when the attorney-client relationship between the parties concluded. (Doc. No. 14 at 8-9.)

There is no evidence in the record at this juncture to support a finding that Plaintiffs were actually aware of the alleged malpractice or that Plaintiffs were aware or reasonably should have become aware of facts sufficient to put them on notice that their injury was sustained *as a result of* the Defendant's allegedly negligent or wrongful conduct prior to June of 2010. *Cf. Kohl*, 977 S.W.2d at 530-31, 533 (finding that a letter from the IRS indicating discrepancies on plaintiff's tax return and instructing plaintiffs to explain in a signed statement where the amounts were reported on the tax return and a subsequent letter from plaintiff's attorneys to the defendant law firm was sufficient to put the plaintiffs

on notice that an injury had been sustained as a result of the law firm's advice); *Rayford v. Leffler*, 953 S.W.2d 204, 207 (Tenn. Ct. App. 1997) (holding that plaintiff knew that he had been harmed by his trial counsel's alleged negligent action when the district court denied plaintiff's motion for comparison testing based in part on plaintiff's admission that his trial counsel had made a tactical decision not to have tests performed on the samples). In fact, Defendants do not argue that Plaintiffs were aware of the alleged malpractice or that Plaintiffs were aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that the foreclosure sale resulted from Defendants' allegedly wrongful conduct. Instead, Defendants contend that the knowledge component of the discovery rule is satisfied by Plaintiffs knowledge of the foreclosure sale on December 9, 2009, alone. This argument is legally insufficient. Knowledge of the foreclosure itself does not demonstrate that the Plaintiffs knew "or in the exercise of reasonable diligence should have known that [the] injury was *caused by the defendant's wrongful or negligent conduct*." *Kohl*, 977 S.W.2d at 532 (emphasis added) (citation omitted).

In sum, the current record does not support a finding that the Plaintiffs were aware that their injury was caused by the Defendants' wrongful or negligent conduct prior to June 21, 2010. (Doc. No. 12 ¶ 17; Doc. No. 12-4.) Accordingly, the present action, filed on March 10, 2011, is not barred on the face of the complaint by the one-year statute of limitations set forth in Tennessee Code Annotated § 28-3-104(a)(2).[4]

## II. Count III - Fraudulent Concealment

Defendants next contend that Count III should be dismissed because the Amended Complaint fails to allege "how, when, where, or why the Defendants actively and fraudulently concealed or even attempted

---

[4] Even assuming Florida law applied, the present action would not be barred by the applicable statute of limitations, Section 95.11(4)(a), Florida Statutes, which provides that attorney malpractice actions are required to be commenced within two years "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence."

to conceal any information," as required to state a claim for fraudulent concealment under Federal Rule of Civil Procedure 9(b).  (Doc. No. 13 at 11.)  In response, Plaintiffs contend that the allegations of the Amended Complaint satisfy each element of a claim for fraudulent concealment under Tennessee law.  (Doc. No. 14 at 10.)

Fraudulent concealment of a cause of action by a defendant tolls the applicable statute of limitations.  *Vance v. Schulder*, 547 S.W.2d 927, 930 (Tenn. 1997).  Generally, a plaintiff seeking to establish fraudulent concealment "must prove that the defendant took affirmative action to conceal his cause of action and that he, the plaintiff, could not have discovered his cause of action despite exercising reasonable diligence."  *Id.* (citing *Redwood v. Raskind*, 350 S.W.2d 414 (Tenn. 1961); *Hudson v. Shoulders*, 45 S.W.2d 1072 (Tenn. 1932)).  "[T]he affirmative action on the part of a defendant must be something more than mere silence or a mere failure to disclose known facts.  There must be some trick or contrivance intended to exclude suspicion and prevent inquiry, *or else there must be a duty resting on the party knowing such facts to disclose them*."  *Benton v. Snyder*, 825 S.W.2d 409, 415 (Tenn. 1992) (emphasis in original) (citing *Patten v. Standard Oil Co. of La.*, 55 S.W.2d 759, 761 (Tenn. 1933)).  In cases where there is a duty to disclose, "that duty may render silence or failure to disclose known facts fraudulent."  *Id*. (citations omitted); *see also Cherry*, 36 S.W.3d at 85 ("[F]raudulent concealment exists when a party having a duty to disclose some fact or facts intentionally hides the facts with the intent to mislead the other party.") (citing *Spence v. Miles Labs., Inc.*, 810 F.Supp. 952, 964 (E.D. Tenn. 1992)).

Federal Rule of Civil Procedure 9(b) provides that in order to state a claim premised on fraud, "a party must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b) ("Rule 9(b)").  The "particularity" requirement "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against

spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988); *Next Century Commc'n Corp. v. Ellis*, 318 F.3d 1023, 1027-28 n.1 (11th Cir. 2003) (indicating that a plaintiff must satisfy Rule 9(b)'s pleading requirements in a diversity fraud action); *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985) (Rule 9(b) serves to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed").

To satisfy Rule 9(b)'s "particularity" standard, a complaint must identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gains by the alleged fraud. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (citation omitted). Thus, Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; "it requires that a complaint plead facts giving rise to an inference of fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in [ ] [a] conclusory fashion.... [A] plaintiff is not expected to actually *prove* his allegations," but it must offer more than "mere conjecture.").

Here, Plaintiffs fail to plead fraudulent concealment with the particularity required by Rule 9(b). While the Amended Complaint alleges that KEL "affirmatively concealed its own attorney malpractice," it does not identify (1) the precise statements, documents, or misrepresentations made by KEL, (2) the time, place, and persons responsible for such statements, documents, or misrepresentations, or (3) the content and manner in which the statements misled Plaintiffs.[5] *See Ambrosia Coal & Const.*, 482 F.3d at

---

[5] The Amended Complaint alleges that KEL "affirmatively concealed its own attorney
(continued...)

1316-17. In addition, the factual allegations of the Amended Complaint and attached exhibits do not demonstrate that the attorney-client relationship between KEL and Plaintiffs actually commenced prior to the date of the foreclosure sale, and the Amended Complaint fails to provide any factual allegations to support a claim that the Defendants took affirmative actions to conceal information from the Plaintiffs. (*See, e.g.*, Doc. No. 12 ¶¶ 14-15; Doc. No. 12-3); *Benton*, 825 S.W.2d at 415 (finding that in order to establish fraudulent concealment there must either "be a duty resting on the party knowing [] facts to disclose them," or a defendant must take affirmative actions to conceal such facts). Accordingly, Count III of the Amended Complaint fails to satisfy the particularity requirements of Rule 9(b).

**Conclusion**

Based on the foregoing, the Motion to Dismiss for Failure to State a Cause of Action with Embedded Memorandum of Authority by Kaufman, Englett & Lynd, PLLC, and Jeffery S. Kaufman (Doc. No. 13, filed Apr. 14, 2011) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent it seeks to dismiss Count III of the Amended Complaint. The Motion is **DENIED** in all other respects. The Motion to Dismiss for Failure to State a Cause of Action with Embedded Memorandum of Authority by Kaufman, Englett & Lynd, PLLC and Jeffery S. Kaufman (Doc. No. 6, filed Mar. 29,

---

[5](...continued)
malpractice through covering up and otherwise failing to disclose to The Learning Connections and its shareholder that [KEL] would have been required to, but did not, comply with Tennessee law through the initiation of the contested foreclosure against [Fifth Third Bank]. (Doc. No. 12 ¶ 32.) The Amended Complaint also alleges that as a result of KEL's concealment, KEL's allegedly wrongful conduct "was not and could not have been discovered by The Learning Connections and its shareholders despite the exercise of reasonable diligence." (*Id.* ¶ 33.) Similarly, paragraph 18 alleges that KEL "took affirmative steps that were designed to fraudulently and actively conceal to the Plaintiffs that (i) the only way in which [KEL] could have challenged the Non-Judicial Foreclosure Proceedings would have been through the filing of the contested foreclosure and that (ii) [KEL] had failed to file the contested foreclosure." (*Id.* ¶ 18.) The Amended Complaint provides no further factual allegations related to the alleged fraudulent concealment.

2011) is **DENIED as moot**. Plaintiffs shall be given leave to file a second amended complaint within fourteen (14) days from the date of filing of this Order. Should Plaintiffs fail to timely file a second amended complaint, this case will proceed on the well-pled claims of the Amended Complaint.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on July 21, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party