**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THE LEARNING CONNECTIONS, INC.,**
**and SYED HASNAIN,**

                    **Plaintiffs,**

**-vs-**                                    **Case No.  6:11-cv-368-Orl-19GJK**

**KAUFMAN, ENGLETT & LYND, PLLC,**
**f/k/a Kaufman, Englett & Lynd, LLC, and**
**JEFFREY S. KAUFMAN,**

                    **Defendants.**
_____

**ORDER**

This case comes before the Court on the following:

1.    Motion for Summary Judgment and Memorandum of Law by Defendants Kaufman,
      Englett & Lynd, PLLC f/k/a/ Kaufman, Englett & Lynd, LLC and Jeffrey S.
      Kaufman (Doc. No. 34, filed Dec. 2, 2011);

2.    Response in Opposition to Defendants' Motion for Summary Judgment by Plaintiffs
      The Learning Connections, Inc. and Syed Hasnain (Doc. No. 44, filed Dec. 15,
      2011); and

3.    Reply and Memorandum of Law to Plaintiffs' Response in Opposition to Motion for
      Summary Judgment by Defendants Kaufman, Englett & Lynd, PLLC f/k/a/
      Kaufman, Englett & Lynd, LLC and Jeffrey S. Kaufman (Doc. No. 49, filed Dec. 28,
      2011.)

**Background**

On March 10, 2011, The Learning Connections, Inc. ("The Learning Connections") and Syed Hasnain ("Hasnain") (collectively "Plaintiffs") filed a Complaint against Kaufman, Englett, and Lynd, LLC ("KEL") and Jeffrey S. Kaufman ("Kaufman") (collectively "Defendants"). (Doc. No. 1.) Plaintiffs then filed a three-count Amended Complaint on March 31, 2011. (Doc. No. 12.) Count I of the Amended Complaint is an action for professional malpractice against Defendants. (*Id.* ¶¶ 20-24.) In Count I, Plaintiffs allege that Defendants committed professional malpractice because they were required, but failed, to contest a foreclosure sale on property ("the Commercial Property") owned and operated by Plaintiffs as a day care center under the name The Learning Connections. (*Id.* ¶ 23.) In Count II, Plaintiffs allege that Kaufman negligently supervised other attorneys at KEL. (*Id.* ¶¶ 25-29.) In Count III, Plaintiffs allege that Defendants fraudulently concealed the attorney malpractice. (*Id.* ¶¶ 30-34.)

On April 14, 2011, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint, and Plaintiffs responded in opposition. (Doc. Nos. 13, 14.) The Court granted Defendants' Motion to Dismiss Count III of the Amended Complaint,[1] but denied Defendants' Motion to Dismiss the Complaint on the grounds that it was barred by the Tennessee one-year statute of limitations. (Doc. No. 29, filed July 22, 2011). Specifically, the Court found that the statute of limitations began to run no earlier than June 21, 2010 which was one year within the date Plaintiffs filed this action. (*Id.* at 10.) That same day, Plaintiffs' filed a Notice of Abandonment of Count III. (Doc. No. 30, filed July 22, 2011.) Defendants filed their Answers and Affirmative Defenses on August 11, 2011.

---

[1] The Court determined that Count III of the Amended Complaint failed to comply with Federal Rule of Civil Procedure 9(b). (Doc. No. 29 at 13.)

(Doc. No. 31.)

On May 13, 2011, a Case Management and Scheduling Order ("the Scheduling Order") was entered. (Doc. No. 18.) In the Scheduling Order, the Court set the following deadlines: (1) July 11, 2011 to amend pleadings; (2) October 14, 2011 to disclose expert reports; (3) November 1, 2011 to complete discovery; (4) December 2, 2011 to file dispositive motions; and (5) the March 2012 trial term for trial. (*Id.*) On December 12, 2011, Defendants filed a Motion to extend time to produce disclosure of expert testimony. (Doc. No. 37.) However, the Court denied the Motion for failure to comply with Local Rule 3.01(g). (Doc. No. 38, filed Dec. 13, 2011.)

On November 14, 2011, Plaintiffs filed a Motion for Summary Judgment as to the professional malpractice claim found in Count I of the Amended Complaint. (Doc. No. 32.) Defendants filed a Response in Opposition to Plaintiffs' Motion for Summary Judgment and a Motion to Dismiss for fraud upon the Court on December 2, 2011. (Doc. No. 35.) Plaintiffs filed an Amended Reply to Defendants' Response in Opposition on December 13, 2011. (Doc. No. 42.) This Motion will be addressed in a separate Order.

The same day Defendants filed their Response in Opposition, they filed a Motion for Summary Judgment, arguing that Plaintiffs' action is barred by the statute of limitations. (Doc. No. 34, filed Dec. 2, 2011.) In support of their Motion, Defendants provide the following: (1) the Matters Listing with Events Reports; (2) the Events Listing Report from January 11, 2010 with entries from 10:28; (3) the Events Listing Report from January 8, 2010; and (4) the Events Listing Report with entries from January 11, 2010 at 11:15. (Doc. Nos. 34-1 through 34-4.) On December 15, 2011, Plaintiffs filed a Response and Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 44) and offered the following in support: (1) the Events Listing

Report from January with entries from January 11, 2010 at 10:26 and 10:28, from January 12, 2010 at 11:59, and from January 13, 2010 at 11:59; and (2) the affidavit of Syed Hasnain and supporting documents ("the Hasnain Affidavit").[2]  (Doc. Nos. 44-1 through 44-2.)  Defendants filed a Reply to Plaintiffs' Response and Memorandum of Law in Opposition on December 28, 2011.  (Doc. No. 49.)  Trial remains set for the March 2012 trial term.  (Doc. No. 18.)

### Legal Standards and Analysis

## I.   Standard of Review

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  An issue of fact is "material" under the applicable substantive law if it might affect the outcome of the case. *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  An issue of fact is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Id.*  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  The party moving for summary judgment has the initial burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law.

---

[2] The documents attached to the Hasnain Affidavit include the following: (1) correspondence between Hasnain and Nathan Brown, an employee of KEL, dated November 25, 2009; (2) a letter from Hasnain and his wife to the President of the mortgage lender, Fifth Third Bank, requesting options to bring the loan into "good condition;" and (3) a letter of recommendation for Syed Hasnain for the position of Executive Director for the Distance Learning Program from Robbie K. Melton, Associate Vice Chancellor of Academic Affairs eLearning.  (Doc. No. 44-2 at 6-11.)

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, the court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

If the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. The nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

A motion for summary judgment may be used to raise the defense that the action is barred by the statute of limitations. *See e.g., Anderson v. George H. Lanier Mem'l Hosp.,* 982 F.2d 1513, 1516-17 (11th Cir. 1993) (finding that the district court properly granted summary judgment in favor of the defendants on the basis that plaintiff's claim was barred by the statute of limitations); *Price*

*v. U.S.,* 775 F.2d 1491, 1494 (11th Cir. 1985) (affirming the district court's decision granting summary judgment in favor of the defendants when the plaintiff's claim was barred by the statute of limitations).

**B.      Facts Viewed in the Light Most Favorable to Plaintiffs**

Plaintiffs hired Defendants to represent them in defense of a foreclosure action on the Commercial Property in Tennessee.  (Doc. No. 44 ¶ 1.)  The foreclosure sale was set to occur on December 9, 2009, and Defendants did not file a complaint for injunctive relief or otherwise contest the non-judicial foreclosure sale.  (Doc. No. 12-5 at 3; Doc. No. 44 ¶ 1.)  Plaintiffs became aware that the foreclosure sale occurred when they were contacted by Defendants on January 8, 2010. (Doc. No. 34-1 at 8; Doc. No. 34-3.)  Plaintiffs expressed that they were upset about losing the property through which they operated their business.  (*Id.*)  Plaintiffs also stated that they were previously told by Nathan Brown and Leonard Mooney, employees at KEL, that they would not lose the property because they could work out a deal with the lender and stop the sale.  (Doc. No. 34-1 at 8, 9; Doc. No. 34-2; Doc. No. 34-3.)  Nevertheless, on January 8, 2010 and January 11, 2010, Defendants instructed Plaintiffs that because Tennessee is a non-judicial foreclosure state, Defendants would not have been able to stop the sale.  (*Id.*; Doc. No. 44-2 ¶ 3.)  Defendants would try, however, to determine Plaintiffs' post-sale rights.  (*Id.*)  Plaintiffs also expressed that they were upset with how the case was handled and wanted to know what Defendants had done in their case. (Doc. No. 34-1 at 8.)

After the foreclosure sale occurred, Defendants made several attempts to negotiate between Plaintiffs and the mortgage lender's representative the repurchase of the Commercial Property. (Doc. No. 12 ¶ 17, Doc. No.  31 ¶ 17; Doc. No. 34-1 at 9-10.)  These attempts were unsuccessful, and on

June 21, 2010, Plaintiffs received a letter from Defendants terminating their representation in the foreclosure matter.  (*Id.*; Doc. No. 12-4.)  Plaintiffs assert that when they received the letter from Defendants in June 2010, they learned for the first time that Tennessee has a procedure to contest a non-judicial foreclosure sale.  (Doc. No. 44-2 ¶ 3.)  Plaintiffs then retained another attorney to represent them in the present legal malpractice action which was filed on March 10, 2011.  (*Id.*; Doc. No. 1.)

####    C.    Analysis

Defendants contend that they are entitled to summary judgment as a matter of law because Plaintiffs' Complaint was filed after the statute of limitations had run.  (Doc. No. 34 at 12.)  Pursuant to an Order issued by the Court on July 22, 2011, Tennessee law applies to Plaintiffs' Amended Complaint, and therefore to the statute of limitations issue.[3]  (Doc. No. 29, filed July 22, 2011.)

Under Tennessee law, whether grounded in breach of contract or tort, the statute of limitations in actions against attorneys for malpractice is one year from the date the cause of action accrues.  Tenn. Code Ann. § 28-3-104(a)(2).  To determine when a legal malpractice action accrues, Tennessee courts apply a two-prong "discovery rule."  *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998).  Under the discovery rule, a cause of action accrues for the

---

[3] The Court applied the "most significant relationship test."  *Nelson v. Freightliner, LLC,* 154 Fed. App'x 98, 102 (11th Cir. 2005) (citing *Bishop v. Fla. Specialty Paint Co.,* 389 So. 2d 999, 1001 (Fla. 1980)); *Topp, Inc. v. Uniden Am. Corp.,* 483 F. Supp. 2d 1187, 1191 (S.D. Fla. 2007) ("A federal district court sitting in Florida and deciding a tort claim is required by Florida choice-of-law rules to apply the 'most significant relationship test.'") (citations omitted).  In reaching its conclusion, the Court noted the following: (1) The Learning Connections is a Tennessee Corporation doing business in Tennessee; (2) the non-judicial foreclosure proceedings occurred in Tennessee; (3) the relationship between Plaintiffs and Defendants centered around the foreclosure of the property pursuant to Tennessee law; and (4) the only factor weighing in favor of applying Florida law is that KEL is a Florida LLC that is principally located in Florida.  (Doc. No. 29 at 7.)

purposes of statute of limitations "when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Id.* (citing *Shadrick v. Cocker*, 963 S.W.2d 726, 733 (Tenn. 1998)).  In legal malpractice cases, the discovery rule is composed of two elements: "(1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct." *Id.* (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 28-30 (Tenn. 1995)).

### 1.   Actual Injury

An actual injury occurs when a client suffers "the loss of a legal right, remedy or interest, or the imposition of a liability." *Kohl*, 977 S.W.2d at 532.  "'Because negligence without injury is not actionable, the legal malpractice statute of limitations does not begin to run until an attorney's negligence has actually injured the client.'" *Wilson v. Pickens*, 196 S.W.3d 138, 142 (Tenn. Ct. App. 2005) (quoting *Cherry v. Williams*, 36 S.W.3d 78, 84 (Tenn Ct. App. 2000)).  "Before that time, any injury is only prospective and uncertain." *Cherry*, 36 S.W.3d at 84 (citation omitted).  "The most easily identifiable time when rights, interests and liabilities become fixed is when a court enters a judgment that adjudicates the parties' rights, imposing a 'legally cognizable injury.'" *O'Boyle v. Shulman*, No. 3:09-CV-169, 2010 WL 1408444, at *5 (E.D. Tenn. Apr. 4, 2010) (quoting *Cherry*, 36 S.W.2d at 84).

The Court has previously addressed the issue of when Plaintiffs' actual injury occurred.  In the Order granting in part and denying in part Defendants' Motion to Dismiss, the Court noted that "Plaintiffs suffered an actual injury no later than December 9, 2009." (Doc. No. 29 at 8.)  The Court

reasoned that "the foreclosure sale of the Commercial Property extinguished Plaintiffs' legal interest in the Commercial Property." (*Id.*)  The date of actual injury is not in dispute.  Accordingly, the Court again finds that actual injury occurred no later than December 9, 2009.

### 2.       Knowledge

The knowledge component of the discovery rule may be established by evidence of the plaintiff's actual or constructive knowledge that injury resulted from the defendant's allegedly wrongful or negligent conduct. *Kohl*, 977 S.W.2d at 532 (citing *Carvell*, 900 S.W.2d at 29).  Actual knowledge exists where "the defendant admits to having committed malpractice or the plaintiff is informed by another attorney of the malpractice." *Id.*  "Under the theory of constructive knowledge, however, the statute may begin to run at an earlier date—whenever the plaintiff becomes aware or reasonably should have become aware of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct." *Id.* (citing *Carvell*, 900 S.W.2d at 29).  Tennessee courts have stressed that there is no requirement that a plaintiff actually know the specific type of legal claim he has or that the injury constituted a breach of the appropriate legal standard. *Id.* at 533 (citing *Shadrick*, 963 S.W.2d at 733).  Rather, a plaintiff is deemed to have constructive knowledge when "he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Id.* (citing *Carvell*, 900 S.W.2d at 29).

The Court previously addressed the issue of when Plaintiffs knew or should have known the injury resulted from Defendants' alleged malpractice in its Order denying in part and granting in part Defendants' Motion to Dismiss.  (Doc. No. 29.)  In that Order, the court noted

> in sum, the current record does not support a finding that the Plaintiffs were aware
> that their injury was caused by the Defendants' wrongful or negligent conduct prior

to June 21, 2010.  (Doc. No. 12 ¶ 17; Doc. No. 12-4.)  Accordingly, the present action, filed on March 10, 2011, is not barred on the face of the complaint by the one-year statute of limitations set forth in Tennessee Code Annotated § 28-3-104(a)(2).

(Doc. No. 29 at 10.)

In their Response in Opposition, Plaintiffs incorrectly contend that Defendants presently assert the same arguments set forth in their Motion to Dismiss.  (Doc. No. 44 ¶ 3.)   However, Defendants submit a different argument not previously raised.  Moreover, the evidence that may be considered on a motion for summary judgment differs from that which may be considered on a motion to dismiss.  *Compare Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (discussing that when ruling on a motion to dismiss, a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"), *with Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

In their Motion for Summary Judgment, Defendants point to entries made in the Events Listing Report, a document that was not in the record at the time the Amended Complaint was filed. (Doc. No. 43 at 9-10.)  According to the Events Listing Report, an entry regarding an outbound call to Plaintiffs indicates that Plaintiffs were "understandibly [sic] very upset" upon learning the Commercial Property was sold in foreclosure.  (Doc. No. 34-1 at 8; Doc. No. 34-3.)  Additionally, entries concerning calls from Plaintiffs on January 11, 2010 to Defendants note that Plaintiffs were

not "happy with the way [Defendants] have handled [the] case" and that Defendants were "very upset b/c . . . [Hasnain] was told by Nathan Brown and Leonard Mooney that they would not need to worry because they would talk to the bank and they would have 90 days from the sale date to work out a deal." (Doc. No. 34-1 at 8, 9; Doc. No. 34-2; Doc. No. 34-4.) Defendants contend that these conversations represent "sufficient evidence of Plaintiffs' knowledge of injury, and sufficient evidence that Plaintiffs felt that the injury was caused by Defendants' alleged wrongdoing." (Doc. No. 34 at 10.) Accordingly, Defendants argue that Plaintiffs knew on January 11, 2010, at the very latest, that injury resulted from Defendants' alleged misconduct and that Plaintiffs' Complaint, filed March 10, 2011, was filed after the one-year statute of limitations had run. (Doc. No. 34 at 11.)

Plaintiffs argue that had Defendants "informed Plaintiffs during the conversations that occurred in January 2010 that there was a procedure to enjoin the sale as per Tennessee Code but that the . . . Defendants neglected to follow such procedure through the filing of the contested foreclosure litigation prior to the sale date, then . . . Defendnats [sic] would be correct that the timeframe on the statue of limitations would be early January, 2010 . . . ." (Doc. No. 44 at 4.) Plaintiffs contend, however, that no such information was conveyed. (*Id.*) Specifically, Plaintiffs point to the Events Listing Report entry from January 8, 2010 at 5:03pm which notes Defendants "explained to client that the state of TN is a non-judicial state and legally we cannot stop a sale date . . . ." (Doc. No. 44 at 5; Doc. No. 34-3.) In response, Defendants argue that this particular entry, if read in full, also evidences Plaintiffs' suspicion of an alleged wrongdoing which would start the running of the statute of limitations. (Doc. No. 49 at 4.)

Plaintiffs also point to the Hasnain Affidavit in which Hasnain asserts that he was "told on January 8, 2010 by the Defendants that Tennessee law does not provide for a procedure to stop the

sale." (Doc. No. 44-2 ¶ 3.)  Hasnain further states that "[i]t was not until after the defendants sent me the letter in June, 2010 did I learn for the first time, that there actually is a procedure in the State of Tennessee to stop or enjoin a sale." (*Id.*)  Defendants argue, however, that the Hasnain Affidavit is a "self-serving affidavit."  (Doc. No. 49.)

Even if the Hasnain Affidavit is "self-serving," it is not precluded from being considered as evidence on a motion for summary judgment.  "[F]or the purposes of summary judgment, there is nothing inherently wrong with 'self-serving testimony,' and it may not be disregarded by the district court in determining whether there is a genuine dispute of fact on a material issue in the case." *Newsome v. Chatham Cnty. Det. Ctr.,* 256 Fed. App'x 342, 346 (11th Cir. 2007); *see also Valazquez-Garcia v. Horizon Lines of P.R., Inc.,* 473 F.3d 11, 18 (1st Cir. 2007) (finding that while a party's own affidavit may be "self-serving," if it is based on first hand knowledge, it may be sufficient to defeat a motion for summary judgment).  Further, a court may not weigh the credibility of witnesses in determining a motion for summary judgment and is limited to determining if there is a genuine issue of material fact from the parties' submissions and the record. *Hairston,* 9 F.3d at 919; *Anderson,* 477 U.S. at 255.

In support of their Motion for Summary Judgment, Defendants cite to *Cherry v. Williams,* 36 S.W.3d 78, 86 (Tenn. Ct. App. 2000),, for the proposition that "[c]ertainly, a client who is shocked into a 'state of disbelief' by a totally unexpected adverse result is put on inquiry notice of his or her lawyer's possible mishandling of the case."  In *Cherry,* the court determined that the plaintiff knew facts which would put him on notice of a legally cognizable injury when the chancery court entered a judgment against him for $75,000 in damages and when the plaintiff confronted his attorneys because he suspected the adverse result was their fault. *Id.*

-12-

Defendants also rely on *Tanaka v. Meares,* 980 S.W.2d 210 (Tenn. Ct. App. 1998), for the proposition that "accusations of mistake or incompetence or claims of mishandling of a case are prima facie evidence of requisite knowledge necessary to satisfy the knowledge element under the Discovery Rule." (Doc. No. 34 at 8-9; Doc. No. 49 at 6.)  However, Defendants reliance on this case is misplaced as *Tanaka* does not stand for such proposition.  Defendants are most likely referring to *Spar Gas, Inc. v. McCune,* 908 S.W.2d 400 (Tenn. Ct. App. 1995), a case to which the *Tanaka* court cites but which was determined to be distinguishable.  *Tanaka,* 980 S.W.2d at 215. In *Spar Gas, Inc.,* the court determined that the plaintiffs had knowledge of the attorney's alleged malpractice more than one year prior to filing the malpractice action because there was evidence that one of the plaintiffs verbally accused an attorney of malpractice and incompetence and because that same plaintiff wrote a letter refusing to pay the legal bills because the case was mishandled on the part of the lawyer.  *Spar Gas, Inc.,* 908 S.W.2d at 402, 403.

*Spar Gas, Inc.,* and *Cherry* are distinguishable from the facts in the present case.  Here, there is no record evidence that shows that prior to one year from the filing of the complaint Plaintiffs accused Defendants of malpractice or incompetency, or that Plaintiffs were "shocked into a state of disbelief."  *See Spar Gas, Inc.,* 908 S.W.2d at 402; *Cherry,* 36 S.W.3d at 86.  And the evidence does not indicate that Plaintiffs suspected the adverse result of losing the Commercial Property was Defendants' fault.  *Cherry,* 36 S.W.3d at 86.  The record evidence merely reflects that Plaintiffs were "upset" that the foreclosure sale occurred and with how the case was being handled.  (Doc. No. 34-1 at 8.)  Moreover, a reasonable juror could conclude that Plaintiffs were not aware that any injuries they suffered were caused by Defendants' alleged wrongdoing because Plaintiffs were told that, under Tennessee law, Defendants could not have stopped the non-judicial foreclosure sale.

(Doc. No. 34-1 at 8; Doc. No. 34-2; Doc. No. 34-3.)

Although the evidence reflects that Plaintiffs were given inconsistent information concerning whether Defendants could have prevented them from losing the Commercial Property, that evidence does not establish, as a matter of law, that Plaintiffs should have known the failure to stop the foreclosure sale was from any wrongdoing on behalf of Defendants. (*See id.*)  As the court stated in *Porter-Metler v. Edwards,* No. 03A01-9709-CV-00393, 1998 WL 131515, at *4 (Tenn. Ct. App. Mar. 25, 1998), "[t]o dismiss this action on summary judgment would be tantamount to holding that a lay person, exercising due diligence, should have immediately mistrusted her attorney and began an independent investigation of his actions . . . ."

In the present case, the record contains no evidence that Plaintiffs either understood or should have understood the alleged wrongful or tortious nature of the alleged misconduct of Defendants when they were informed that the foreclosure sale occurred.  Moreover, Plaintiffs were not put on notice of any wrongful conduct by the conversations with Defendants since Plaintiffs were allegedly told that "the state of TN is a non-judicial state and legally [Defendants cannot stop a sale date]."  (Doc. No. 34-1; Doc. No. 34-2; Doc. No. 34-3.)  Plaintiffs have presented evidence which tends to show that Plaintiffs were not aware that the completed foreclosure could have resulted from possible legal malpractice until Plaintiffs received the letter from Defendants on June 21, 2010 terminating representation.  (Doc. No. 44-1 at 1, 2 ; Doc. No. 44- 2 ¶ 3.)

Therefore, after carefully reviewing the evidence presented in this case, the Court concludes that a genuine issue of material fact exists as to whether Plaintiffs knew or should have known more than one year prior to filing this malpractice action that they suffered injury as a result of Defendants' wrongful conduct.  Accordingly, Defendants Motion for Summary Judgment should

be denied.  (Doc. No. 34.)

## Conclusion

Based on the foregoing, it is hereby **ORDERED** and **ADJUDGED** that Defendants' Motion

for Summary Judgment is **DENIED** (Doc. No. 34, filed Dec. 2, 2011).

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January ___17th___, 2012.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record